UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER PIEROT** | * | **CIVIL ACTION NO. 18-0975** |
| v. | * | **JUDGE TERRY A. DOUGHTY** |
| **GILEAD SCIENCES, INC.** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss pursuant to Rule 12(b)(6), [doc. # 13], and motion for judicial notice of documents attached to its motion to dismiss, [doc. #14], filed by Defendant Gilead Sciences, Inc. ("Gilead"). The motions are opposed. For reasons explained below, it is recommended that the motion to dismiss be **GRANTED** and ordered that the motion for judicial notice is **GRANTED**.

**Background**

Plaintiff Christopher Pierot was diagnosed with the human immunodeficiency virus ("HIV") in 2008. (Compl. ¶ 2, [doc. # 1]). He was prescribed Truvada, an antiviral medication manufactured by Gilead, to treat and manage his HIV. He took Truvada from 2008 through 2009. (*Id.* ¶ 26). Pierot claims that as a result of taking Truvada, he suffered bone mineral density loss and bone necrosis, and in 2012, underwent a double hip replacement. (*Id.* ¶ 15).

Truvada works by preventing HIV from replicating within the body. (*Id.* ¶ 2). One component of Truvada is tenofovir disoproxil fumarate ("TDF"), a prodrug of the compound tenofovir. (*Id.* ¶ 27). According to Pierot, TDF suffers from low bioavailability and must be ingested in high doses to prevent viral replication. (*Id.* ¶ 30). The body is unable to process all of

the drug, and the excess toxic amounts end up in the kidneys and bones. (*Id.* ¶¶ 7–8). Pierot alleges Gilead knew that TDF toxicity led to kidney and bone damage but failed to warn physicians and consumers of the risks associated with ingestion and misrepresented the safety and benefits of TDF. (*Id.* ¶ 78).

Further, Pierot alleges that Gilead could have designed a safer and more effective HIV drug using a different prodrug form of tenofovir, tenofovir alafenamide fumarate ("TAF"). (*See id.* ¶¶ 13, 28, 43, 53). Beginning in 1997, Gilead tested both TAF and TDF. (*Id.* ¶ 38). Its research indicated that TAF had greater potency, concentration, efficacy, and bioavailability than TDF, and TDF presented toxicity risks to kidneys and bones. (*Id.* ¶¶ 44, 53).

Truvada was approved for sale by the Federal Drug Administration ("FDA") in August of 2004. (*Id.* ¶ 55). Gilead applied for approval to sell a TAF-containing drug in November of 2014. (*Id.* ¶ 63). Pierot alleges that, despite its research, Gilead waited to seek FDA approval for TAF to charge monopoly prices on TDF-containing drugs, which had cornered the HIV antiviral treatment market. (*Id.* ¶ 52; *see id.* ¶¶ 64–65).

On July 27, 2018, Pierot filed the above captioned action against Gilead. (Compl.) He asserts claims under the Louisiana Products Liability Act ("LPLA") for defective design, inadequate warning, and breach of express warranty and a claim for breach of warranty in redhibition. (*Id.* at 16–21).

On December 18, 2018, Gilead filed the instant motion to dismiss on the grounds that Pierot's claims are prescribed and preempted by federal law. [doc. # 13]. Gilead also filed a motion for judicial notice of documents it attached to its motion to dismiss. [doc. # 14]. On January 16, 2019, Pierot filed a response to each motion. [docs. # 18, 19]. The Court granted Pierot's subsequent motion to amend/correct his memorandum in opposition to Defendant's

2

motion to dismiss, [doc. # 22], and Pierot filed the operative memorandum on January 23, 2019. [doc. # 23]. Gilead filed replies on February 6, 2019. [docs. # 24, 25]. This matter is ripe.

**Standard of Review**

Federal Rule of Civil 12(b)(6) sanctions dismissal when plaintiff fails "to state a claim upon which relief can be granted." A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss, a court accepts as true all well pleaded factual allegations in the complaint. *Id.*

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). However, a court is also permitted to rely on "documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Id.* Federal Rule of Evidence 201(b)(2) provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). In deciding a Rule 12(b)(6) motion, it is proper "to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). Further, "[d]ocuments that a defendant attaches to a

motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)

A Rule 12(b)(6) motion to dismiss may be granted on the basis of prescription if "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Thompson v. Deutsche Bank Nat. Tr. Co.*, 775 F.3d 298, 302 (5th Cir. 2014). Although the defendant generally bears the burden of proving a claim has prescribed, if a claim is untimely on its face, the burden shifts to the plaintiff to demonstrate the prescriptive period has been suspended. *Potier v. JBS Liberty Sec., Inc.*, No. 6:13-CV-00789, 2014 WL 5449726, at *3 (W.D. La. Oct. 24, 2014).

## Discussion

### I. Judicial Notice

Gilead requests the Court judicially notice twelve FDA-approved labels for Truvada, dated between 2007 and 2018, that it attached to its motion to dismiss. (RJN, [doc. # 14]; *see* Exs. A–L, [docs. # 13-2–13-13]). According to Gilead, the Court may take judicial notice of the labels because (1) "they are publicly available and/or official documents issued by the FDA"; (2) "there is no dispute regarding the existence or authenticity of these documents"; (3) and the labeling "is referenced in Plaintiff's Complaint and forms the basis of Plaintiff's claims." (RJN at 2).

Pierot opposes Gilead's motion, claiming "Gilead's request for judicial notice is improper" and "[n]one of the facts Gilead seeks to notice are relevant to" his claims. (Opp. RJN

at 2, [doc. # 19]).[1] Pierot claims judicial notice applies only to facts relevant to the case, and the FDA labels are not relevant because they

> do not render deficient or contradict Mr. Pierot's allegations that Gilead knew or should have known about the risks associated with its TDF-based drugs, that it withheld this full information from the public, and that it failed to sufficiently warn about these risks all while it had or should have had knowledge of the more superior, less toxic TAF formulation in its exclusive possession.

(*Id.* at 3–4). Further, Pierot claims the FDA-labels constitute inadmissible hearsay. (*Id.* at 7).

The FDA-approved labels for Truvada are available to the public on the FDA's website. Further, the labels are relevant to Pierot's claims, specifically to the adequacy of Truvada's warnings. Thus, the Court takes judicial notice of the FDA-approved labels attached as Exs. A–L. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (finding that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand"); *Pramann v. Janssen Pharm.*, Inc., No. CV 16-12413, 2017 WL 58469, at *2 n.3 (E.D. La. Jan. 5, 2017) ("[T]he Court takes judicial notice of the contents of the FDA approved [drug] label as allowed by Rule 201 of the Federal Rules of Evidence."). Such judicial notice does not extend to the adequacy of the labels, but only to their existence. *See Rollins v. St. Jude Med.*, 583 F. Supp. 2d 790, 805 (W.D. La. 2008) (taking judicial notice of the existence of an adverse inference report available on the FDA's website but not its adequacy).

**II. Prescription**

    A. Law

---

[1] Pierot also incorrectly contends that Gilead seeks judicial notice of documents maintained by the United States Department of Health and Human Services and the World Health Organization. (*See* Opp. RJN at 2); [doc. # 25 at 3].

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In diversity cases, federal courts apply state laws on limitations and tolling. *Alexander v. Nixon*, No. CV 15-2300, 2015 WL 9997250, at *2 (W.D. La. Dec. 15, 2015). Here, Pierot asserts claims under the LPLA and Louisiana's civil code. (*See* Compl. at 16–21). Thus, the disputed issues are governed by Louisiana substantive law. To determine Louisiana law, this Court examines Louisiana's codes and statutes and looks to the final decisions of the Louisiana Supreme Court. *See Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269–70 (5th Cir. 2009).

Actions brought under the LPLA are subject to a one-year prescriptive period, which "commences to run from the day injury or damage is sustained." *Jenkins v. Bristol-Myers Squibb Co.*, 689 F. App'x 793, 795 (5th Cir. 2017) (quoting La. Civ. Code art. 3492). Damage is sustained within the meaning of article 3492 "only when it has manifested itself with sufficient certainty to support accrual of a cause of action." *Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 345 (5th Cir. 2010) (quoting *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993)). Likewise, an "action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer." La. Civ. Code art. 2534(B).

The doctrine of *contra non valentem* prevents the running of the prescriptive period when "the cause of action is not known or reasonably knowable by the plaintiff." *Cole*, 620 So. 2d 1154 at 1156. The doctrine is rooted in principles of equity and justice, which "demand suspension when the plaintiff is effectively prevented [from] enforcing his rights for reasons external to his own will." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th

6

Cir. 2002). However, the doctrine does not suspend prescription when the plaintiff is able to bring a claim but simply fails to do so. *Id.*

Because *contra non valentem* is a judicially created exception to the statutory rule of prescription, it "is strictly construed and its benefits are only extended up to the time that the plaintiff has actual or constructive knowledge of the tort[i]ous act." *Daigle v. McCarthy*, 444 F. Supp. 2d 705, 711 (W.D. La. 2006). The Louisiana Supreme Court has recognized only four instances when *contra non valentem* suspends prescription, two of which are relevant to this matter.[2]

First, under the discovery rule, prescription is suspended when "the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Terrebonne Parish School Bd.*, 310 F.3d at 884 n.37. Prescription will not commence at the earliest sign that "something [is] wrong . . . unless plaintiff knew or should have known by exercising reasonable diligence that there was a reasonable possibility that his problem" may have been caused by defendant's conduct. *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987). Thus, as long as "a plaintiff acts reasonably to discover the cause of a problem," the prescriptive period will not begin to run until he has "a reasonable basis to pursue a claim against a specific defendant." *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 894 (5th Cir. 2010).

Second, *contra non valentem* applies when "the debtor (defendant) himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action."

---

[2] The other two instances are "where there was some legal cause that prevented the courts from taking cognizance of or acting on the plaintiff's action" and "where there was some condition coupled with the contract or connected with the proceedings that prevented the creditor (plaintiff) from suing or acting." *Terrebonne Parish School Bd.*, 310 F.3d at 884 n.37.

*Terrebonne Parish School Bd.*, 310 F.3d at 884 n.37. For this exception to apply, the plaintiff must show that "(1) the defendant engage[d] in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff [was] reasonable in his or her inaction." *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 252 (internal citations omitted). Prescription is then suspended until the plaintiff "is made aware of the truth of the matter. The focus remains on whether a plaintiff was able to bring his cause of action." *Daigle*, 444 F. Supp. 2d at 711 (internal citations omitted).

*Contra non valentem* should only be applied in extreme circumstances. The Supreme Court of Louisiana has clarified that courts should look to "the reasonableness of a plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct." *Griffin on behalf of Griffin v. Hess Corp.*, 715 F. App'x 338, 342 (5th Cir. 2017) (citing *Marin*, So. 3d at 246).

B. Arguments

Gilead argues that Pierot's claims are time barred because they accrued more than one year before he filed the instant suit and Pierot has not satisfied his burden of proving why the prescriptive period has not run. (MTD at 5–6, [doc. # 13-1]). Gilead claims that the discovery rule does not suspend prescription because Pierot "knew of the facts upon which his claims are based by no later than 2012," yet he waited six years to sue, until July 27, 2018. (*Id.* at 6). Specifically, Pierot's stopping Truvada in 2009 and undergoing double hip replacement in 2012 demonstrates that he either knew or should have known of the alleged cause of his injury because Truvada's FDA-approved label in effect as of July 2012 disclosed the risk of bone injuries. Gilead claims that Pierot's "bare allegation" that he could not reasonably have known or learned

8

about the risks of Truvada should be disregarded because it does not satisfy the pleading standards and is contradicted by Pierot's own allegations and Truvada's FDA-approved labels. (*Id.* at 6–7). Gilead also claims that Pierot has failed to adequately allege (1) any misrepresentation or omission; (2) reliance; or (3) that he did anything to investigate his injury to establish fraudulent concealment. (*Id.* at 8–10).

Pierot responds that *contra non valentem* prevented the running of the prescriptive period. First, under the discovery rule, although Pierot was aware of his injury as of 2012, he was unaware that his injury might be related to Gilead's conduct. (Opp. MTD at 5–6, [doc. # 23]). Further, Pierot claims there is no evidence that he was ever exposed to Truvada's labels, but even if he was, the "mere mention of 'bone injury and bone mineral density loss'" in Truvada's labels "is insufficient to put Mr. Pierot on notice of his cause of action." (*Id.* at 6–7). He also claims that the warning labels do not constitute notice because they do not disclose the existence of TAF or that TDF was inferior to TAF. (*Id.* at 6).

Second, Pierot claims he has sufficiently alleged fraudulent concealment in his Complaint. He lists examples from his Complaint of Gilead's misrepresentations between 2001 and 2004 and states "[f]rom this it can easily follow that Gilead's actions . . . prevented [him] from pursuing a cause of action because he did not know the origin of his" injury and it was reasonable for "to delay filing suit until he learned of the connection between TDF and bone injury and bone mineral density loss." (*Id.* at 8–9; *see* Compl. ¶¶ 39–40, 44–45, 50–51, 53–56, 72–76).

C. <u>Analysis</u>

9

Pierot alleges he took Truvada from 2008 through 2009 and then underwent a double hip replacement in 2012. Based on the pleadings, his claims prescribed, at the latest, one year after his surgery. Thus, the burden shifts to Pierot to prove an exception to prescription.

The touchstone of *contra non valentem* is the reasonableness of plaintiff's action. When Pierot began taking Truvada at the age of twenty-six, he had no prior history of fractures and was not at risk for osteopenia. By the time he turned thirty, his bones were so degraded that he needed a double hip replacement. (Compl. ¶¶ 10, 15). At this point, a reasonable plaintiff would be alerted to a possibility that he was the victim of tortious conduct, possibly related to the medication that warned of "decreases in bone mineral density (BMD) . . . at the lumbar spine and hip." (Ex. A at 16; *see* Ex. B at 5–6, Ex. C at 5–6, Ex. D at 6, Ex. E at 7–8, Ex. F at 8–9, Ex. G at 8–9, 16, Ex. H at 8–9, 16). However, in his Complaint, Pierot does not allege that he took any action to seek out those responsible for his injury. Nor does Pierot indicate when or how he learned that his injury could be related to Truvada or to Gilead's alleged tortious conduct. In his opposition brief, Pierot states he became aware he had a claim against Gilead in May of 2018 but provides no explanation for this awareness. (Opp. MTD at 6). Simply put, Pierot's Complaint is devoid of any facts related to action he took following his injury to determine the cause thereof.

A plaintiff "may not simply sit on [his] hands and do nothing to investigate [his injury] and expect [his] actions to be deemed reasonable." *Eastin v. Entergy Corp.*, 2003-1030 (La. 2/6/04), 865 So. 2d 49, 56. Absent additional facts, the undersigned cannot conclude that Pierot did anything to investigate his injury. Thus, Pierot has not met his burden of proving that his actions, or lack thereof, were reasonable. Accordingly, *contra non valentem* does not apply and Pierot's claims should be dismissed. *See Hernandez v. Smith*, No. 15-CV-2271, 2015 WL 9921067, at *2 (W.D. La. Sept. 28, 2015) (dismissing Complaint because Plaintiff did not "offer

10

any specific facts about . . . how she discovered [concealed evidence] . . . or (perhaps most important) when she discovered it"); *Vice v. Sgarlato Med LLC*, No. 10-266, 2010 WL 2942652, at *3 (W.D. La. July 21, 2010) ("[F]ailure to allege sufficient facts to allege what diligent efforts he took, and/or the reasons why the discovery was not made earlier [is] fatal to plaintiff's claims."). Because Pierot's claims should be dismissed as untimely, the Court need not address the merits of Gilead's motion to dismiss.

Nonetheless, courts are obliged to "freely" grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Further, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . ." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, it is conceivable that plaintiff can cure his deficient pleading via amendment. Accordingly, the instant recommendation of dismissal is subject to plaintiff's opportunity to seek leave of court to amend his complaint with a proposed pleading that cures the deficient allegations, within the deadline to file objections to this report and recommendation, if he has a good faith basis to do so.

## Conclusion

In the interim, and in the absent of a curative amendment,

**IT IS RECOMMENDED** that Defendant's motion to dismiss [doc. # 13] be **GRANTED** and that Plaintiff's claims be **DISMISSED with prejudice**.

Further, **IT IS ORDERED** that Defendant's motion for judicial notice [doc. # 14] is **GRANTED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and

Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 11th day of March, 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE